

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

**FILED**



## United States District Court

| District | EASTERN DISTRICT | APR 01 2009 |

Name
HOUA LAO

Prisoner No.
F08644

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
By _____ DEPUTY CLERK

Place of Confinement

PELICAN BAY STATE PRISON

2:08CN3171-EFB

Name of Petitioner (include name under which convicted)

HOUA LAO

Name of Respondent (authorized person having custody of petitioner)

v. FRANCISCO JACQUES, WARDEN

The Attorney General of the State of:

EDMUND G. BROWN JR.

## PETITION
AMENDED

1. Name and location of court which entered the judgment of conviction under attack  SACRAMENTO SUPERIOR

COURT, 720 9TH ST. SACRAMENTO, CA 95814

2. Date of judgment of conviction  DECEMBER 9TH 2005

3. Length of sentence LIFE WITHOUT PAROLE, 25 YRS., 20 YRS.

4. Nature of offense involved (all counts) 187 Sub.d.(a), 664/187 Subd.(a), 12034

Subd (d), 186.22(b)

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐

(2)



AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court _SACRAMENTO CO. SUPERIOR CT. DIRECT APPEAL_

(b) Result _DENIAL_

(c) Date of result and citation, if known _N/A_

(d) Grounds raised _CONTRIVED SELF-DEFENSE_

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _CALIFORNIA SUPREME CT. PETITION FOR REVIEW_

(2) Result _DENIAL_

(3) Date of result and citation, if known _MARCH 12, 2008_

(4) Grounds raised _CONTRIVED SELF-DEFENSE_
_(SEE ATTACH. APPENDIX 1)_

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐ No ☑

11. If your answer to 10 was "yes," give the following information:
(a) (1) Name of court _____

(2) Nature of proceeding _____

(3) Grounds raised _____





AO 241 (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐  No ☑

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐  No ☑
(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
    (1) First petition, etc.          Yes ☑  No ☐
    (2) Second petition,              Yes ☑  No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
    CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.



AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(I) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Insufficient Evidence to Convict Petitioner of Murder and Attempted Murder

Supporting FACTS (state *briefly* without citing cases or law) Even assuming Lao was in the Toyota at the time of the shooting, the Defense demonstrated that the people at Western Ave. had fired shots first, and that the people inside the vehicle returned shots. This theory of self-defense is supported by the evidence the prosecutor presented at trial. There were two different 45 caliber casings (Cont. on page 2)

B. Ground two: Denial of effective assistance of counsel.

Supporting FACTS (state *briefly* without citing cases or law) During Petitioners Jury Trial main prosecution witness, A Mr. Xiong gave conflicting statements to Sacramento PD Detectives on 2/5/02 and 2/15/02. In these statements, Xiong clames not to be a gang member. A SPD Det. A. Lee interviewed Xiong on 2/5/02, Xiong states again he is not a gang member, on 2/15/02 a det. (cont. on page 3)



Page 2 of Ground One

found closed to where Vue and Xiong was during the
shooting. There were two shots first followed by more
shots. There were concentrated lead detected on the
hands of Fong Vue and more gunshot residue
were detected on the hands of Yee Xiong. The right
side of the back passenger window had been blow
out. As indicated by the trajectory analysis,
the bullet would have to exit an open portal
in the vehicle. The back windshield had also
been blown out.

There were indications that Xiong and
Vue possibly shot a gun that night. Apparently
there were more than one gun that was used,
not including weapons from the Toyota. The
only way Vue was to shoot a gun is before
he got shot that caused him to rapidly pro-
gressed to coma. Petitioner further contents
that one of the first shot the people at Western
Ave. enter the back right passenger side win-
dow and exit the back windshield as the
Toyota is approaching the people at Weste-
rn Ave.

The evidence presented at trial was insu-
fficient to find the petitioner guilty of murder
and attempted murder. Therefore the petit-



Page **3** of Ground One
ioner's rights to a fair trial and due process
were violated and prejudice occurred against
the 5th, 6th and 14 Amendment to the U.S.
Constitution.



Page 2 of Ground Two

Pat Keller interviewed Xiong. In that statement
Xiong says "I am RBG/HNS", which is a known
Sacramento street gang. Defense counsel never
fully cross examined nor questioned Xiong
on his inconsistant statements to detectives
such questioning would have led to Xiong
being proved to be an unreliable witness.
Xiong gives another statement on 2/5/02
in which he states to Det. Lee to have not
fired a weapon nor any of his companions
on the night of the shooting. Petitioners de-
fense did not request a gun shot residue
(G.S.R) test for all prosecution witness.
Clothing G.S.R. tests should have been
done to establish which parties fired
weapons and were present. Xiong denied
firing a weapon during the altercation
(RT 312-3B) however G.S.R. tests showed
that he had gunshot residue on his hands
in a pattern consistent with recently
firing a gun (RT 831-835, 862-863) this
fact, if followed up by defense counsel,
which was not, in petitioners belief
would impeach witness Xiong. Xiong



Page 3 of Ground Two

lied to detectives and again on the stand.

A witness, a Mr. Vang Vang gives a statements on June 7, 2002 to SPD Inv. Mark Rall to have witness a black car driving southbound on Western Ave. through the kitchen window while washing his hands. This is directly contradicted by Mr. Xiong! Xiong puts Vang Vang right beside him in his 2/5/02 statement to Det. Lee, at the time of the shooting. Vang Vang clothing, at the request of defense counsel, should have been tested for G.S.R. thus proving he lied to detectives. The credibility of both Xiong and Vang Vang should have been challenged by defense counsel.

A Vue Heu is also a main witness but gun residue tests were not conducted on him and were only done on Fong Vue and Yee Xiong after many hours had elapsed. Though Vue Heu testified that he and his friends never fired any weapon that day (4 RT 1083-1084), gunshot residue was found in the hands of Yee Xiong; the tests conducted on Fong Vue indicates the pres-



Page 4 of Ground Two

ence of concentrated led. (3 RT 846) When the
versons of the story recounted by Vue Heu
and Yee Xiong substainially and materially
diverged, no attempt was made to probe
these participant witness. 3212 Western
Ave. is the home of Yee Xiong and Vue
Heu friend Vang Vang but no apparent
effort was made to talk to this individual.
Though Vue Heu stated that directly after
the shooting, Xiong bleeding from the head
stagger to the near by home of his girlfr-
iend, no effort was made to identify her
or search her residence for secreted weap-
ons.

At the scene of 3212 Western Ave. was
described by investigating officers as chaotic
(1 RT 78) with as many as 15 people assem-
bled outside of the residence while the
police processed the crime scene. (1RT 71)
What is most notable about the proces-
sing of the crime scene is what the offi-
cers failed to do. No DNA or ballistics
evidence was collected from the blood trial
and blue jacket located between 3212

Page 5 of Ground Two

and 3206 Western Ave.

Detective Marnie Stigerts who was placed
in charge of processing the crime scene, tes-
tified that she arrived at the scene at app-
roximately 11:00 pm but neither she nor
any other officers ever went into the resid-
ence or the backyard area of 3212 Western
Ave. and she never return to the scene
during daylight hours. (1 RT 124-125) Detec-
tive Stigerts testified that she did not look
north of 3212 Western Ave. and did not
cross the street from this address.(1 RT 125)

Of the 15 or so witness on the street
when officer Michael Boyd arrived to secure
the scene and collect evidence, no were in-
terviewed. (1RT-7B-78) Petitioner counsel
failed to even question police detectives as
to why?

Ballistics expert determined the sha-
ttered passenger window, the intact drivers
side windows and the absence of any fired
slug in the car required a shot fired at
the car from the north ie: as it drove
the street towards 3212 Western Ave.



Page 6 of Ground Two

where Xiong and his party were standing. This
is constant with Xiong having fired first.

    The people forensics expert determinded
the bullets fire at the car were fired from
outside towards the car. Fracture marks on
the rear window aligned with fracture marks
on the front windshield, indicating that
the bullets exited through the front winds-
hield from the rear (3 RT 839-843-863)

    Based on evidence that the alleged
"victims" actually fired weapons, waether
aggressively or defensively, Xiong denied
that "their" side had fired at all (1 RT 203-
204, 2 RT 327-328, 4 RT 1017-1083, 1084) In
sum, there was evidence that the gang me-
mbers on the street fired first, thus pet-
itioner only acted in imperfect self defe-
nce.

    Defense counsel never raised any of
these points during trial, therefor dening
petitioner an effective defense.

Page 7 of Ground Two

② COUNSEL FAILED TO REQUEST AN INQUIRY
INTO PRESECUTION WITNESS DETECTIVE STIGERTS
PROHIBITED COMMUNICATION WITH THE JURORS:

On July 20th 2005 at the petitioner's
trial, one of the prosecution witness, Detect-
ive Stigerts made illegal and prohibited
communication with the jurors by talking
to the jurors but when this matter was
brought to the attention of the petitioner's
counsel, petitioner's counsel failed to req-
uest inquiry into the prohibited commun-
ication that may have infected the jurors
and caused prejudice. Petitioner's counsel
fail below an objective standard of resona-
bleness under prevailing proffessional
norms and a reasonable probability ex-
isted that, but for counsel's failings,
defendent would have received a more fav-
orable result.

This was ineffective assistance of
petitioner's counsel and the petitioner's
right to a fair trial and impartial
jury and due process were violated and
prejudice occurred against the 5th,

Page B of Ground Two

6th and 14th Amendments to the U.S. Cons-
titution.



AO 241 (Rev. 5/85)

C. Ground three: *INEFFECTIVE ASSISTANCE OF CO-DEFENDED COUNSEL*
*FOR GIVING INEFFECTIVE EXAMPLE IN CLOSING (CONT. ON PG. 2)*

Supporting FACTS (state *briefly* without citing cases or law):

*SEE PG. 2 OF GROUND 3*

D. Ground four: *THE COURT ERRED BY FAILING TO DECLARE A*
*MISTRIAL*

Supporting FACTS (state *briefly* without citing cases or law):

*SEE PG. 1 OF GROUN 4*

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐  No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing *CAROL  F.  POLIDO*

*700  H. ST.  SUITE 270  SACRAMENTO, CA  95814*

(b) At arraignment and plea

Pg. 2 of Ground 3

ARGUEMENT THAT DEFEATED THE DEFENSE THEORY
OF SELF-DEFENSE:

On thursday, August 4th 2005 co-defended trial counsel Paul Irish said in closing arguement that "We know from the evidence that there was a projectile fire through, as I just went over, the rear passenger window. That projectile was never fired.. (paused for a moment then continued).. recovered." The trial counsel is referring to the first projectile that the people at Western Ave. had fired. According to the Reporters Transcripts (5RT 1228) trial counsel let the word "never fired" sink in the jury's head and then corrected himself by saying "recovered." This clearly ineffective assistance of counsel and this simply defeats the petitioners theory of self-defense, since the defense is relying on the first bullet that penetrated and blew out the rear passenger window.

Co-defend trial counsel also said in closing arguement that "it's very



Pg. 3 of Ground 3

difficult for somebody on the other side to prove a negitive, as we all know." (4RT 1195) It is clear in the record that counsel is saying that it is difficult for the defense to prove self-defense. Therefore, it caused prejudice and violeted petitioner's rights to effective assistance of counsel, fair trial and due process, as guaranteed by the U.S. Constitution, the 5th, 6th and 14th Amendmends.

Page 1 of Ground 4

On July 20th 2005 at the petitioner's trial, one of the prosecution witness, Detective Stigerts made an illegal and prohibited communications with the jurors by talking to the jurors, but when this matter was brought to the attention of the court, the court failed to declare a mistial. The court abused its discretion by presuming communication between jurors and Detective Stigerts harmless and being not prejudice.

The petitioner has a right to a fair and impartial jury, but the illegal and prohibited communication infected the jurors and caused prejudice within the petitioner's trial. The prohibited discussion is presume to be prejudice and invalids the guilt verdict. Therefore, the petitioner's rights to a fair and impartial jury, a fair trial and due process were violated and prejudice occurred against the 5th, 6th and 14th Amendment to the U.S. Constitution.



AO 241 (Rev. 5/85)

(c) At trial  AMY E. ROGERS

700 H. ST, SUITE 270, SACRAMENTO, CA 95814

(d) At sentencing  AMY E. ROGERS

700 H. ST, SUITE 270, SACRAMENTO, CA 95814

(e) On appeal  MARK D. GREENBERG

484 LAKE PARK AVE #429, OAKLAND, CA 94610

(f) In any post-conviction proceeding  MARK D. GREENBERG

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
   Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
   Yes ☐ No ☒
   (a) If so, give name and location of court which imposed sentence to be served in the future:

   (b) Give date and length of the above sentence:

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes ☐ No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed

03-29-09
(date)

_____
Signature of Petitioner

(7)



APPENDIX 1

## IN THE SUPREMECOURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | |
| ) | |
| **Plaintiff and Respondent,** ) | **C051473** |
| ) | |
| **KISON HER,** *et al.,* ) | **Sacramento No.** |
| ) | **02F06418** |
| **Defendants and Appellants.** ) | |
| ) | |
| ) | |

### PETITION FOR REVIEW
### (LAO)

Mark D. Greenberg
Attorney at Law
State Bar No. 99726
PMB No. 429
484 Lake Park Avenue
Oakland, CA 94610
(510) 452-3126

Attorney for Appellant

# TABLE OF CONTENTS

**PETITION FOR REVIEW**        1

**QUESTIONS PRESENTED**        1

**STATEMENT OF FACTS**        2

**ARGUMENT FOR REVIEW**        4

**I.**
**PETITION FOR REVIEW SHOULD BE
GRANTED TO DETERMINE THE SCOPE AND
LIMITS OF CALJIC No. 5.55 IN GANG CASES**

       4

**II.**
**PETITION FOR REVIEW SHOULD BE
GRANTED IN ORDER TO CLARIFY THE LAW
OF IMPERFECT SELF-DEFENSE AS STATED
IN THE 1997 REVISION OF CALJIC No. 5.17**

       10

**III.**
**PETITION FOR REVIEW SHOULD BE
GRANTED TO REASSESS THE
CONSTITUTIONALITY OF CONSCIOUSNESS
OF GUILT INSTRUCTIONS AIMED AT
DEFENDANT ALONE**

       16

**CONCLUSION**        19

**CERTIFICATION OF WORD-COUNT**        20



# TABLE OF AUTHORITIES

**Cases**

*Crane* v. *Kentucky* (1986) 476 U.S. 683                                      9

*Delaney* v. *Superior Court* (1990) 50 Cal.3rd 785                    16

*In re Christian S.* (1994) 7 Cal.4th 768                                    11,13

*In re Murchison* (1955) 349 U.S. 133                                         19

*Irvin* v. *Dowd* (1961) 366 U.S. 717                                          19

*Johnson* v. *State* (Nev.1976) 551 P.2nd 241                            5

*Marshall* v. *Jerrico, Inc.* (1980) 446 U.S. 238                        19

*Mullaney* v. *Wilbur* (1975) 421 U.S. 684                                 16

*People* v. *Adrian* (1982) 135 Cal.App.3rd 335                         16

*People* v. *Bottger* (1983) 142 Cal.App.3rd 974                        12

*People* v. *Boyette* (2002) 29 Cal.4th 381                               11,12

*People* v. *Button* (1895) 106 Cal. 628                                     4

*People* v. *Cash* (2002) 28 Cal.4th 703                                    16

*People* v. *Ceballos* (1974) 12 Cal.3rd 470                              4

*People* v. *Conckling* (1896) 111 Cal. 616                               6,7

*People* v. *Crandell* (1988) 46 Cal.3rd 833                             18

People v. *Crew* (2003) 31 Cal.4th 822                                     18

*People* v. *Ganier* (1950) 95 Cal.App.2nd 489                         5

*People* v. *Graham* (1969) 71 Cal.2nd 303                              11

*People* v. *Hinshaw* (1924) 194 Cal. 1                                     5



*People* v. *Holloway* (2004) 33 Cal.4th 96, 142      18

*People* v. *Jackson* (1996) 13 Cal.4th 1164      18

*People* v. *Jones* (1961) 191 Cal.App.2nd 478      4

*People* v. *King* (1978) 22 Cal.3rd 12      4

*People* v. *Loustenau* (1986) 181 Cal.App.3rd 163      14

*People* v. *Maurer* (1995) 32 Cal.App.4th 1121      12

*People* v. *Minifie* (1996) 13 Cal.4th 1055      7

*People* v. *Moon* (2005) 37 Cal.4th 1      11

*People* v. *Olguin* (1994) 31 Cal.App.4th 1355      6

*People* v. *Perez* (1979) 23 Cal.3rd 545      11

*People* v. *San Nicolas* (2004) 34 al.4th 614      18

*People* v. *Silva* (Colo.App.1999) 987 P.2nd 909      5

*People* v. *Williams* (1977) 75 Cal.App.3rd 731      7

*People* v. *Yeoman* (2003) 31 Cal.4th 93      18

*Peters* v. *Kiff* (1972) 407 U.S. 493, 501      19

*Smith* v. *State* (Tex.Crim.App.1998) 965 S.W.2nd 509      5

*State* v. *Wright* (Or.App. 1977) 572 P.2nd 667      18

*Tennessee* v. *Garner* (1985) 471 U.S. 1      14

*Turner* v. *Louisiana* (1965) 379 U.S. 466      19

**Statutes**

Pen. Code, § 197      4



**Other Authorities**

CALCRIM No. 571                                    14

CALCRIM No. 3472                                   5

CALJIC No. 2.03                                    16

CALJIC No. 2.06                                    17

CALJIC No. 2.51                                    17

CALJIC No. 2.52                                    17

CALJIC No. 5.17                                    2,10

CALJIC No. 5.55                                    2,4

CALJIC No. 8.40                                    16

CALJIC No. 8.50                                    16



Mark D. Greenberg
SBN: 99726
Attorney at Law
484 Lake Park Avenue, No. 429
Oakland, CA 94610

Attorney for Appellant

By Appointment of the Court of Appeal
Under CCAP's Independent Case System

## IN THE SUPREMECOURT OF THE STATE OF CALIFORNIA

**PEOPLE OF THE STATE OF CALIFORNIA,** )
                                                  )

    **Plaintiff and Respondent,**        ) **C051473**

                                                  )

**KISON HER,** *et al.,*                ) **Sacramento No.**
                                                 ) **02F06418**

    **Defendants and Appellants.**      )

                                                  )
                                                  )

## PETITION FOR REVIEW
## (LAO)

    Appellant Lao respectfully requests review of the decision of the California
Court of Appeal, Third Appellate District, filed on November 30, 2007, affirming
his conviction for first-degree murder. A copy of the Court of Appeal decision is
attached as an appendix hereto.

## QUESTIONS PRESENTED

    1. In a gang case in which the prosecution's theory was that of a "drive-by
shooting," and in which there was evidence of firing from the alleged victim's

1



side, is it error to instruct in accord with CALJIC No. 5.55 on pretextual self-defense when there was no evidence of an intent to provoke the other side, but where the case had to be resolved either as murder or as perfect or imperfect self-defense; and if the giving of CALJIC No. 5.55 was error, did it deprive appellant of his Sixth and Fourteenth Amendment right to a meaningful opportunity to present a defense?

2. Is the 1997 revision of CALJIC No. 5.17, informing the jurors that imperfect self-defense is unavailable "if the defendant by his unlawful or wrongful conduct created the circumstances which legally justif[ied] his adversary's use of force" an incorrect statement of law, which has now been corrected by CALCRIM 571, which omits this proviso, and did the giving of this erroneous instruction deprive appellant of his Sixth and Fourteenth Amendment right to a meaningful opportunity to present a defense?

3. Do consciousness of guilt and inference of guilt instructions aimed at the defendant alone violate due process?

## STATEMENT OF FACTS

For the most part, the statement of facts as set forth in the attached Court of Appeal decision is adequate. (Slip. Op., pp. 2-7.) However, a full understanding of the issues raised requires certain evidence not mentioned by the Court of Appeal be highlighted.

In its summary, the Court of Appeal noted the following:

" . . . . The rear window of the Camry was shattered by a bullet that he People's forensic expert determined was likely fired from outside the vehicle and which exited through the front windshield." (Slip op., p. 3.)

2



This, of course, is consistent with the alleged victims firing back, more or less in self-defense, after the Toyota had passed, having fired its aggressive barrage. But there was other evidence and other inferences.

The prosecution could not conclusively prove that the shots at the Camry came from behind. The rear passenger window, which was the side facing the alleged victims, was also shattered and, according to the prosecution's expert, it was shattered from the outside. There was no bullet found lodged in the car that corresponded to the shot that shattered this window. Further, the driver side windows of this car were rolled up and were in tact. The only possible exit was the rear windshield, in which case, it was possible that the expert's opinion of an exterior entry to shatter the rear windshield was wrong. In this regard, the prosecution's expert admitted that her assessment was highly circumstantial based on less than all that remained of the car by the time it was recovered. (2RT 565; 3RT 839-843, 863-863.)

The shattered passenger window, the in tact driver's side windows, and the absence of any fired slug in the interior compartment of the Toyota required a shot fired at the car from the north, i.e., as it drove up the street *toward* 3212 Western, where the alleged victims were standing. This scenario was consistent with the outside party having fired first. Further, the police did not search the opposite side of Western generally to look for bullets. They also failed to search the backyards of the houses on that side of Western to look for weapons, and did not search inside 3212 itself. (1RT 59-61, 63, 124, 125-126; 2RT 356.)

In addition, there was sufficient time between the shooting and the arrival of the police officer to allow any number of the multitude that gathered or that was there already to pick up any spent casings, such as those from the .40 caliber gun that was fired, or from the .38, or more from the .45, or even those from the possible 9 mm. (1RT 69, 71.) Finally, although there was no dispute, based on the circumstantial evidence, that the alleged victims actually fired, whether aggressively or defensively, both Yee Xiong and Veu Heu denied that their side

3



had fired at all. (1RT 203-204; 2RT 327-328; 4RT 1017, 1083-1084.) In sum there was evidence from which a trier of fact could conclude that the gang members on the street fired first.

## ARGUMENT FOR REVIEW

### I.
### PETITION FOR REVIEW SHOULD BE GRANTED TO DETERMINE THE SCOPE AND LIMITS OF CALJIC No. 5.55 IN GANG CASES

In accord with CALJIC No. 5.55, the jury was instructed that "[t]he right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense." (4RT 1134.) The instruction was deemed sufficiently important by defense counsel that they objected to it for lack of support in the evidence. (4RT 1096.) It was sufficiently important to the prosecution that, based expressly on this instruction, he argued to the jurors that this instruction precluded any claim of self-defense in this case. (4RT 1172-1173.) Defense counsel were correct; the instruction was without evidentiary support; it does not apply merely because the defendants, knowingly, place themselves in a volatile situation in which they or their opponent are the potential aggressor; it applies only when there is evidence of an *intent* to create the appearance of, or pretext for, self-defense.

Section 197 of the Penal Code sets forth the grounds for justifiable homicide in this State, including self-defense, which has been codified in the statute in its common-law form. (*People* v. *Jones* (1961) 191 Cal.App.2nd 478, 481; see also *People* v. *King* (1978) 22 Cal.3rd 12, 26; *People* v. *Ceballos* (1974) 12 Cal.3rd 470, 478; and *People* v. *Button* (1895) 106 Cal. 628, 631.)[1] The

---

[1] Section 197 provides in relevant part: "Homicide is also justifiable when committed by any person in any of the following cases: [¶] (1) When resisting any attempt to murder any person, or to commit a felony, o r to do some great bodily injury upon any person; or ... [¶] (3) When committed in the lawful

4



principle that self-defense is precluded when the defendant provokes his victim applied at common-law only when the deceased made the first attack, and "the defendant did some act or used some words *intended to and calculated to* bring on the difficulty *in order* to have a pretext for inflicting injury upon the deceased." (*Smith* v. *State* (Tex.Crim.App.1998) 965 S.W.2nd 509, 513-514, emphasis added; *People* v. *Silva* (Colo.App.1999) 987 P.2nd 909, 914 ["In order to warrant the giving of this instruction, the prosecution has the burden of establishing that the defendant intended to harm the victim and that he or she intended the provocation to goad the victim into attacking him or her as pretext for injuring or killing the victim."]; see also *Johnson* v. *State* (Nev.1976) 551 P.2nd 241, 242.) As the principle was formulated in California cases before the advent of CALJIC, "self-defense is not available as a plea to a defendant who has sought a quarrel *with the design* to force a deadly issue and thus, through his *fraud, contrivance, or fault, to create a real or apparent necessity for making a felonious assault.*" (*People* v. *Hinshaw* (1924) 194 Cal. 1, 26; *People* v. *Ganier* (1950) 95 Cal.App.2nd 489, 496.) And finally, as the principle has been formulated in this post-CALJIC era, "A person does not have the right to self-defense if he or she provokes a fight or quarrel *with the intent to create* an excuse to use force." (CALCRIM No. 3472.)

There is little doubt that the preclusion of self-defense under the principle of CALJIC No. 5.55 requires that the defendant intend to contrive and manipulate an occasion for the exercise of self-defense. Thus, for example, if there were in this case, evidence of an express plan to provoke first fire from HNS, or perhaps evidence of a conscious brandishing of weapons to provoke first fire, then the

---

defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed . . . ."



instruction would be justified. But the evidence does not show anything of the sort. Indeed, the prosecution's theory of a drive by shooting indicates an intent to *ambush*, not an intent that involves giving one's opponent an opportunity to defend himself. From the defense point of view, there was neither a driveby nor an intent to manipulate the appearance of self-defense. Rather, the issue presented by the evidence in this case was stark: appellant was either guilty of first degree murder for a driveby shooting, or he was not guilty of murder because of justifiable homicide. In short, the only question presented in this case was *which* party *initiated* the deadly affray. (*People* v. *Conckling* (1896) 111 Cal. 616, 622.) CALJIC No. 5.55 was completely without evidentiary support.

But what of the prosecutor's interpretation of the instruction, which he gave in closing argument as follows?:

"But there is an instruction, one of them you received, and it has to do with self-defense. If you're a gang member, okay, and your decision is to have that kind of weaponry, go into that area, run up on your rivals, possessing firearms, to initiate some sort of quarrel or a fight, you're not entitled to self-defense, okay?

"This is what the instruction says:

"The right of self-defense is not available. The right of self-defense does not exist to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense. It does not exist.

"Okay. That instruction would eliminate any possibility of self-defense. . . ." (4RT 1172-1173.)

This is simply *not* the law. In *People* v. *Olguin* (1994) 31 Cal.App.4[th] 1355, the defendant killed his opponent from a rival gang where mutual provocation and gangster punctilio was the order of the day and "the expected

6



prelude for violent confrontation." (*Id.*, at pp. 1366-1367.) The Court agreed that this was not the type of factual predicate necessary to warrant instruction in accord with CALJIC No. 5.55, but found the error harmless in any event. (*Id.*, at p. 1380.) But it is clear that the factual predicate for the instruction was missing in *Olguin* because there was no evidence of an *intent* to create a pretext for the exercise of self-defense. The gang milieu of the confrontation makes no difference, since the law does not determine the right to self-defense by the broad moral context in which a dispute arises. It depends from the very narrow question of who, by an overt physical act that could be reasonably interpreted as dangerous to the other person's life or limb, initiated the fatal encounter. (*People* v. *Conckling*, *supra*, 111 Cal. 616, 622; *People* v. *Williams* (1977) 75 Cal.App.3rd 731, 739-740; see *People* v. *Minifie* (1996) 13 Cal.4th 1055, 1068 ["[T]he law recognizes the justification of self-defense not because the victim 'deserved' what he or she got, but because the defendant acted *reasonably* under the circumstances."].)

The situation presented here, and often in many gang cases, is no different than that addressed by this Court in *People* v. *Conkling* (1896) 111 Cal. 616. In *Conkling*, the deceased rented a piece of property over which passed a road customarily used by the neighboring residents for travel. He fenced off the road to prevent travel, which caused eventually a heated confrontation between him and defendant in which threats were exchanged. Defendant retreated, retracing his steps in order to complete his journey. However, a day or two later, defendant bought a rifle, after which he went and tore down the fence. Another two days later, defendant was proceeding down the road in his buggy, armed with his rifle when he encountered the deceased. Trouble arose between them, and defendant shot and killed the deceased with his rifle. There were no eyewitnesses to the confrontation. (*Id.*, at pp. 619-620.)

This Court in *Conkling* made it clear that the question here was not who had the legal or moral right to the passage over the road, but who in fact "began



the deadly affray – that is, who by some overt act, caused the other, as a
reasonable man, to believe that he was in great danger of loss of life or limb . . . ."
(*Id.*, at pp. 621-622.)  From this it followed that the following instruction was
erroneous:

> " '[W]hile it is true that an honest apprehension of danger to life or
> limb may justify a man or taking the life of another, yet that
> apprehension must arise out of a reasonable cause.  But a cause
> which originates in the fault of the person himself in a quarrel which
> he has provoked, or in a danger which he has voluntarily brought
> upon himself by his own misconduct, cannot be considered
> reasonable, or sufficient in law to support a well-grounded
> apprehension of imminent danger to his person.  Error of
> apprehension the law overlooks, when a man is called upon to act on
> appearances, but it does not overlook dishonesty of apprehension.
> Hence, a real or apparent necessity brought about by the design,
> contrivance, or fault of the defendant, cannot be availed of as a
> defense for the commission of a crime or a homicide.'"  (*Id.*, at pp.
> 624-625.)

This Court commented:

> "We think this instruction was a trespass upon the rights of the
> defendant, as not containing a sound exposition of the law.  There
> was no evidence in the case that the defendant was the first assailant,
> and then withdrew, or attempted in good faith to withdraw, from the
> affray before he fired the fatal shot.  In fact, defendant's own
> testimony is to the contrary.  For this reason the instruction,
> regardless of the soundness of the law covered by it, would seem to
> be without the facts,, and not pertinent to the issues under
> investigation."  (*Id.*, at p. 625.)

Thus, *Conkling* makes it crystal clear that a defendant may have enmities
with the deceased, may arm himself, may place himself in a situation in which
violence was a possibility, and may still act in self-defense and be vindicated in

8



court *without* the burden of an instruction on contrived self-defense. The reason is that either the defendant initiated the *deadly* affray or he did not. *Conkling* also makes it clear that being armed, at enmity with the deceased, and arguing over territorial rights does not warrant the instruction on contrived self-defense.

The Court of Appeal rejected the claim, making a feint in the direction of invited error: "[T]he instruction was simply part of a packet of self-defense instructions requested by the defense, all of which the Court decided to give and some of which conflicted with others." (Slip op., p. 22.) The Court did not follow through on this because the record clearly shows that defense counsel objected vehemently to the instruction in question. (4RT 1096.) Instead, the Court made the point that the jurors were told not to apply the instructions that had no factual predicate. (Slip op., pp. 22-23.) However, the assumption of an ability to do so takes no account whatsoever of the prosecutor's *express* misuse of the instruction in his closing argument quoted above.

The Court then goes on to deny that there was any substantial evidence to support a finding of self-defense, and therefore nothing with the improper instruction to conflict with. (Slip op., p. 23.) This, however, simply ignores the circumstantial evidence of the gunshots fired at the Camry from a direction in front of it, as well as the false denials of any shooting by the HMS witnesses, which can be construed as consciousness of *their* guilt.

Finally, the error here transcends state instructional error. Self-defense was the express defense presented by appellant. The giving of CALJIC No. 5.55, containing a principle that, according to the prosecutor, completely disqualified self-defense, effectively deprived appellant of his Sixth and Fourteenth Amendment rights to present a defense. (*Crane* v. *Kentucky* (1986) 476 U.S. 683, 689-690.)

The problem of self-defense and imperfect self-defense in gang cases presents an important issue of law. Under our current law, no one forfeits the right to self-defense merely by placing him- or herself in a violent or provocative

9



situation. It is still important who is the initial aggressor. If the law of self-defense needs to be modified under modern urban conditions in which gang crimes are frequent, then this must be addressed expressly, and the question raised by CALJIC No. 5.55 in the context of this case is an appropriate vehicle for doing so. Petition for review should be granted.

## II.
## PETITION FOR REVIEW SHOULD BE GRANTED IN ORDER TO CLARIFY THE LAW OF IMPERFECT SELF-DEFENSE AS STATED IN THE 1997 REVISION OF CALJIC No. 5.17

If there was reasonable doubt as to which side fired first, the gang milieu of the confrontation might lead one to infer a sort of "fog of war," in which it simply was not clear who started the violence or whether only one side started it or whether there was a simultaneous, semi-mutual impulse. Thus, the belief in the need for self-defense may have been unreasonable, raising a question of imperfect self-defense— a matter for which the trial court instructed the jurors in accord with CALJIC No. 5.17 as follows:

> "A person who kills another person in the actual unreasonable belief in the necessity to defense against imminent peril to life or great bodily injury kills unlawfully but does not harbor malice a forethought and is not guilty of murder. This would be so even though a reasonable person knowing the same facts, would not have had the same belief. Such an actual but unreasonable belief is not a defense to the crime of voluntary manslaughter." (4RT 1132.)

This is a precise statement of the doctrine of imperfect self-defense, but the following portion of the CALJIC instruction given in this case is not part of the doctrine and is an erroneous statement of law:

10



"However, this principle [i.e., imperfect self-defense] is not available and malice aforethought is not negated if the Defendant by his unlawful or wrongful conduct created the circumstances which legally justified his adversary's use of force, attack or pursuit." (4RT 1133.)

Below, appellant contended that this paragraph incorrectly stated the law, informing the jurors that a mistake of fact as to who the aggressor was disqualified the partial defense of imperfect self-defense, even though this Court has made it clear that imperfect self-defense is in fact a sort of mistake of fact of this nature. (*In re Christian S.* (1994) 7 Cal.4th 768, 779, fn. 3.) But before this contention is elaborated, it will be useful to address the Court of Appeal's claim of invited error since defense counsel requested CALJIC No. 5.17 without differentiating any specific part of it. (Slip op., p. 25.)

The doctrine of invited error is designed "to estop a party from asserting an error when his own conduct induces the commission of error." (*People* v. *Perez* (1979) 23 Cal.3rd 545, 549-550, fn. 3 (internal quotation marks omitted).) In the context of jury instructions, the doctrine is limited in its application because error is nonetheless error and is no less operative on deliberations of the jury because the erroneous instruction may have been requested by counsel for the defense." (*People* v. *Graham* (1969) 71 Cal.2nd 303, 319 (internal quotation marks omitted).) Moreover, because the liberty of the defendant in a criminal case is at stake in trial, there is a "continuing duty upon the part of the trial court to see that he jury [is] properly instructed upon all matters pertinent to [its] discussion of the cause." (*Ibid.* (internal quotation marks omitted).) Thus, there is limitation on estoppel by invited error: "The invited error doctrine will not preclude appellate review if the record fails to show counsel had a tactical reason for requesting or acquiescing in the instruction." (*People* v. *Moon* (2005) 37 Cal.4th 1, 28; *People* v. *Boyette* (2002) 29 Cal.4th 381, 438; *People* v. *Graham, supra,* 71 Cal.2nd at p. 319.)

11



Here, the record probably does "suggest" that defense counsel requested CALJIC No. 5.17, although this is not made expressly clear. It is based simply on the trial court's passing remark that "[t]he defense has requested the entire group of self-defense instructions" so that the court, over the objections of defense counsel, would also add CALJIC No. 5.55 to the mix. (4RT 1097.) But it is not enough for the record to show that appellant requested CALJIC No. 5.17, respondent must point to something on the record that exhibits a *tactical* reason for counsel to desire instruction on a principle that *limits* and potentially *removes* from the jury's consideration the very principle of imperfect self-defense counsel wants presented the jurors. The answer is that the third paragraph of CALJIC No. 5.17 was so unequivocally detrimental to appellant's interests that the record here does not establish invited error

Thus, in *People* v. *Boyette* (2002) 29 Cal.4th 381, the California Supreme Court rejected a claim of invited error where defense counsel himself requested consciousness of guilt instructions, which of course focus only on the defendant. The Court stated that although normally a request for an instruction would constitute invited error, precluding a challenge of these instructions on appeal, "we agree with defendant that the record demonstrates no obvious tactical reason why defense counsel wish to have the jury instructed that evidence that defendant gave willfully false or misleading statements could be used to infer a consciousness of guilt." (*Id.* at 438.) Similarly, in *People* v. *Maurer* (1995) 32 Cal.App.4th 1121, this Court declined to find invited error of an instruction that effectively allowed the prosecution to dispense with proving the requisite mental state of the crime. (*Id.*, at p. 1128.) Thus, too, in *People* v. *Bottger* (1983) 142 Cal.App.3rd 974, the Court refused to find invited error in counsel's having requested instruction on implied malice for a crime that requires an actual intent to kill, thereby lightening the prosecution's actual burden of proof. (*Id.*, at pp. 978-980.) As these cases illustrate, invited error is not established when the instruction requested is clearly detrimental to the defendant's interests, as in fact the limitation paragraph of

12

CALJIC No. 5.17 was in this case. In short, the request for instruction on imperfect self-defense does not "invite" with it an incorrect statement of law that *limits* the application of imperfect self-defense, which limitation cannot *possibly* be construed in favor of the defense.

The Court of Appeal nonetheless addresses the merits of the issue and cites this Court's footnote 1 in *In re Chirstian S., supra.* (Slip. Op., p. 25.) The language of footnote 1 is as follows:

> "It is well established that the ordinary self-defense doctrine –
> applicable when a defendant reasonably believes his safety is
> endangered – *may not be invoked by a defendant, who, through his
> own wrongful conduct (e.g., the initiation of physical assault or the
> commission of a felony), has created circumstances under which his
> adversary's attack or pursuit is legally justified.* [Citation.] It
> follows, *a fortiori*, that imperfect self-defense doctrine cannot be
> invoked in such circumstances. For example, the imperfect self-
> defense doctrine would not permit a fleeing felon who shoots a
> pursuing police officer to escape a murder conviction even if the
> felon killed his pursuer with an actual belief in the need for self-
> defense." (*Id.*, at p. 773, fn. 1, emphasis added.)

However, this language has to be understood in light of the language of footnote 3 on page 779, in which this Court noted that "a claim of imperfect self-defense . . . is based on a defendant's assertion that he lacked malice under penal Code 188 because he acted under an unreasonable *mistake of fact* – that is, the need to defend himself against imminent peril of death or great bodily harm." (Italics added.) The context of footnote 1, and the seemingly contradictory assertion in footnote 3, makes it clear that this Court here was speaking of the ignoring of, or ignorance of, the *law*, and not a mistake of *fact*, or ignorance of *facts*. The purpose of footnote 1 is to emphasize that the doctrine of imperfect self-defense, in its sphere of partial exculpation, does not have a scope any

13



broader than perfect self-defense has in its sphere of complete
exculpation. In other words, under the doctrine of imperfect self-defense,
the defendant may not mistakenly or willfully broaden the *legal* contours
of the doctrine of self-defense and still claim imperfect self-defense. By
taking the language out its qualifying context, the CALJIC committee has
extinguished any distinction between mistake of fact and mistake of law,
and has erroneously conferred on the language an absolute cast that it
should not have.[2]

One should note that the CALCRIM committee has now corrected
CALJIC's mistake. The CALCRIM instruction on imperfect self-defense,
CALCRIM No. 571, is as follows:

"A killing that would otherwise be murder is reduced to
voluntary manslaughter if the defendant killed a person because he
acted in imperfect self-defense. If you conclude that defendant acted
in complete self-defense, his action was lawful and you must find
him not guilty of any crime. The difference between complete self-
defense and imperfect self-defense depends on whether the
defendant's belief in the need to use deadly force was reasonable.
The defendant acted in imperfect self-defense of:

"1. The defendant actually believed that he was in imminent
danger of being killed or suffering great bodily injury; AND

---

[2] The examples used in the *Christian S.* footnote are significant when analyzed.
The "commission of a felony" simply precludes the right of self-defense
regardless of the defendant's state of mind. (*People* v. *Loustenau* (1986) 181
Cal.App.3rd 163, 170.) Similarly, a fleeing felon has forfeited his right to self-
defense regardless whether he perceives correctly or not that his pursuer is going
to apply deadly force. (See *Tennessee* v. *Garner* (1985) 471 U.S. 1, 11-12.) In
both instances any belief by the defendant that he retains a right to self-defense
will always be a mistake of law. The "initiation of a physical assault" differs in
that it can sometimes be predicated on a mistake of law and sometimes on a
mistake of fact. To be consonant with the other examples and with the overall
thrust of the footnote, "the initiation of physical assault" must be understood as a
reference to a mistake of law and not to a mistake of fact.

14



"2. The defendant actually believed that he immediate use of deadly force was necessary to defend against danger; BUT

"3. At least one of those beliefs was unreasonable.

"Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be.

"In evaluating the defendant's beliefs, consider all the circumstances as they were known and appeared to the defendant.

"If you find that [the victim] threatened or harmed the defendant in the past, you may consider that information in evaluating the defendant's beliefs.

"If you find that the defendant knew that [the victim] had threatened or harmed others in the past, you may consider that information in evaluating the defendant's beliefs.

"If you find that the defendant received a threat from someone else that he reasonably associated with [the victim], you may consider that threat in evaluating the defendant's beliefs.

"The People have the burden of proving beyond a reasonable doubt that the defendant was not acting in imperfect self-defense. If the People have not met this burden, you must find the defendant not guilty of murder."

There is *nothing* in this instruction that is similar to the assertion that imperfect self-defense is unavailable "if the defendant by his unlawful or wrongful conduct created the circumstances which legally justified his adversary's use of force or attack." (CALJIC No. 5.17.) The CALCRIM Committee has corrected the instruction to conform to the law.

Thus, the limiting language in CALJIC No. 5.17 is erroneous and creates a bar to a finding of voluntary manslaughter if appellant was found to have objectively been the aggressor regardless of his subjective statement of mind. Thus, also, if the gang evidence in this case were accepted to one degree or

15



another by the jurors as showing an aggression by MOD, this should not have precluded a finding of imperfect self-defense *except* for the erroneous language of CALJIC No. 5.17.

This instructional problem is also of federal constitutional significance. The Fourteenth Amendment requires that the prosecution, in a murder case, prove beyond a reasonable doubt the absence of those factors that reduce a murder to the crime of voluntary manslaughter. (*Mullaney* v. *Wilbur* (1975) 421 U.S. 684, 698 , 704; *People* v. *Adrian* (1982) 135 Cal.App.3rd 335, 339; see also CALJIC No. 8.40 and CALJIC No. 8.50.) The instructional language at issue here, in virtually negating the doctrine of imperfect self-defense, lightens this burden of proof in violation of the Fourteenth Amendment. Further, the right to present a defense, as guaranteed by the Sixth and Fourteenth Amendments, includes the right to present a partial defense. (*People* v. *Cash* (2002) 28 Cal.4th 703, 727; *Delaney* v. *Superior Court* (1990) 50 Cal.3rd 785, 809.)

Thus, an important question of state law and of federal constitutional law is presented here on a record where these questions make a significant difference. Petition for review should be granted.

### III.
### PETITION FOR REVIEW SHOULD BE GRANTED TO REASSESS THE CONSTITUTIONALITY OF CONSCIOUSNESS OF GUILT INSTRUCTIONS AIMED AT DEFENDANT ALONE

The trial court gave standard consciousness of, and inference of guilt instructions in this case. First, in accord with CALJIC No. 2.03, the jurors were instructed as follows:

"If you find that before this trial a defendant made a willfully false or deliberately misleading statement concerning the crimes for which he is now being tried, you may consider that statement as a

16

circumstance tending to prove a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt, and its weight and significant [*sic*], if any, are for you to decide." (4RT 1116-1117.)

Secondly, the Court instructed in accord with CALJIC No. 2.06 as follows:

"If you find that a defendant attempted to suppress evidence against himself in any manner, such as by concealing evidence, this attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide." (4RT 1117.)

Thirdly, there was instruction on motive, in accord with CALJIC No. 2.52:

"Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish that the Defendant is guilty. Absence of motive may tend to show the Defendant is not guilty." (4RT 1121.)

Finally, the jurors were instructed on flight in accord with CALJIC No. 2.51:

"The flight of a person after the commission of a crime is not sufficient in itself to establish his guilt but is a fact which, if proved, may be considered by you in light of all the other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide." (4RT 1121.)

Appellant contended that these were argumentative, pinpoint instructions, that rendered the instant case fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment.

17



As noted below, appellant pointed out that this Court has approved of these instructions as constitutional and even as beneficial to the criminal defendant. (*People* v. *Coffman* (2004) 34 Cal.4th 1, 103; *People* v. *San Nicolas* (2004) 34 al.4th 614, 667; *People* v. *Holloway* (2004) 33 Cal.4th 96, 142; People v. *Crew* (2003) 31 Cal.4th 822, 848-849; *People* v. *Yeoman* (2003) 31 Cal.4th 93, 131; *People* v. *Jackson* (1996) 13 Cal.4th 1164, 1224; *People* v. *Crandell* (1988) 46 Cal.3rd 833, 871.) The Court of Appeal quotes this concession by appellant and asserts that "[t]he point of Lao's argument is difficult to fathom." (Slip op., p. 27.) But the point did not lie very deep, and if the Court failed to "fathom" it, it was only for lack of trying.

For if one merely read a sentence or two further in the argument, one would have come across this assertion: "Nonetheless, the argument is not barred, and is necessary at least for purposes of further review." (AOB, p. 28.) Thereupon, appellant launched into an argument that, contrary to this Court's pronouncements, the instructions were fundamentally unfair and did not in fact benefit the criminal defendant. Appellant cited in support of his claim, *State* v. *Wright* (Or.App. 1977) 572 P.2nd 667, 668, which holds that similar instructions are fundamentally unfair. Finally, appellant argued that they were prejudicial in this case where the *alleged victim* had given false statements to the police which a jury could construe as showing *his* consciousness of guilt – a question highly relevant to that of self-defense.[3]

Essentially, such instructions have the effect of throwing, or appearing to throw, the prestige and weight of the court itself behind the theory of the

_____

[3] The Court of Appeal raises the principle of *stare decisis* to an epistemological level where it has no proper place. Instead of merely citing this Court's authority as *institutionally* dispositive, the Court makes this question-begging assertion: "[W]e do not perceive how the combined effect of instructions that were concededly proper and applicable to the case can be alchemized into a finding of prejudicial error." (Slip op., p. 27.) Of course, no wizardry was required. The argument is that these instructions *should not be deemed proper*. One wonders who is and is not practicing alchemy here.

18

prosecutor at trial. A fair and reliable determination in a criminal case requires of course a fair and impartial trier of fact. (*In re Murchison* (1955) 349 U.S. 133, 136; *Marshall* v. *Jerrico, Inc.* (1980) 446 U.S. 238, 242.) In a criminal case, where there is a Sixth Amendment guarantee of a jury consisting of impartial and indifferent jurors, capable of deciding the case based on evidence and law presented in court. (*Irvin* v. *Dowd* (1961) 366 U.S. 717, 721-722; *Turner* v. *Louisiana* (1965) 379 U.S. 466, 471-473; *Peters* v. *Kiff* (1972) 407 U.S. 493, 501-502.) This Court should grant review in order to reassess its position on these instructions.

## CONCLUSION

For any or for all of the foregoing reasons, petition for review should be granted.

Dated: January 2, 2008

Respectfully submitted,

Mark D. Greenberg
Attorney for Appellant Lao

19



## CERTIFICATION OF WORD-COUNT

I am attorney for appellant in the above-titled action. This petition has been produced by computer, and in reliance on the word-count function of the computer program used to produce this document, I hereby certify that, exclusive of the table of contents, the attached court of appeal decisions, and this certificate, this document contains 5962 words.

Dated: January 2, 2008

Mark D. Greenberg
Attorney for Petitioner

20



## PROOF OF SERVICE BY MAIL

(C.C.P. Sec. 101a #2015-5, U.S.C. Sec. 1746)

I, _Houa Lao_____, am a resident of Pelican Bay State Prison, in the County of

Del Norte, State of California. I am over the age of eighteen (18) years and am a party to this action.

My State Prison address is: Pelican Bay State Prison, P.O. Box 7500, Housing Unit _A6_ Cell

Number _2/2_, Crescent City, CA 95532-7500.

On the _29th_ day of _March , 2009_, I served the following (set forth the exact

title of document[s] served):

_WRIT OF HABEAS CORPUS_____

_____

_____

On the party(s) herein by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with

postage thereon fully paid, in the United States mail, in a receptacle so provided at Pelican Bay State

Prison, Crescent City, CA 95532, and addressed as follows:

_U.S. COURTS_____

_OFFICE OF THE CLERK, U.S. DIST. COURT_

_EASTERN DIST. OF CALIFORNIA_

_501 "I" St., STE 4-200_
_SACRAMENTO, CA 95814-2322_
I declare under penalty of perjury that the foregoing is true and correct:

Inmate Signature                     _03-29-09_
                                     Date

Page Number: _____